THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:07-CV-240

| | |
|---|---|
| LYNN M. VINCENT, )<br>)<br>    Plaintiff, )<br>)<br>  v. )<br>)<br>LUCENT TECHNOLOGIES, INC., AND )<br>LUCENT RETIREMENT INCOME PLAN, )<br>)<br>    Defendants. )<br>_____) | ORDER |

THIS MATTER is before the Court on Cross Motion's for Summary Judgment. For reasons stated below, Plaintiff's Motion is GRANTED as to her request for injunctive relief, finding her eligible to reenter the Service Based Pension Program; GRANTED as to an adjustment of earned service credits, awarding credits in the SBP from September 1, 2001 onward; DENIED as to an award for statutory damages; and HELD IN ABEYANCE as to an award of attorney fees. Defendant's Motion is DENIED as to injunctive relief, finding Plaintiff ineligible to reenter the Service Based Pension Program; and GRANTED as to denying Plaintiff's request for statutory damages.

**Background**

Plaintiff, Lynn M. Vincent ("Vincent"), asks this Court to enter judgment on two issues. First, Plaintiff seeks injunctive relief: finding her eligible for continuing participation in Lucent Service Based Pension Program. Second, Plaintiff seeks statutory damages for Defendant's refusal to produce requested documents.

Lucent Technologies Inc. ("Lucent") created the Lucent Retirement Income Plan ("LRIP") in 1996. *See Systems Council Em-3 v. AT&T Co.*, 159 F.3d 1376, 1377 (D.C. Cir.

1

1998). Under the LRIP, a participant accrues benefits under one of two formulas: the Service Based Pension Program ("SBP") or the Account Balance Plan Formula ("ABP"). (Def.'s Mem. Supp. Mot. Summ. J. 4.) The SBP is Lucent's traditional defined benefit formula. (*Id.*) The ABP is separate "cash balance" retirement program introduced in 1999. (*Id.* at 5.) Employees hired after January 1, 1999 are required to enroll in the ABP, as the SBP was closed to new enrollment. (*Id.*)

The closure of SBP enrollment affected employees who participated in the SBP, left Lucent, and were rehired after the SBP enrollment closed. The LRIP provides for these employees, and as a general rule, participants rehired after January 1, 1999 cannot reenter the SBP. (Jt. Ex. 1, Section 4.1(a)(i)-(ii)(1).) However, there are two exceptions: previous SBP participants may reenter that plan if they are eligible for an immediate bridge under LRIP Sections 6.4(a)(i)(1) or 6.6. (*Id.*) In order to reenter the SBP, a participant who took a lump sum distribution upon leaving Lucent must repay the lump sum amount, with interest, within six months of re-employment. (Jt. Ex. 1, App. A, Section A.1.5(a).)

A Plan Administrator ("Administrator") makes LRIP benefit determinations. (Jt. Ex. 1, Section 3.3.) The Administrator's decision is appealable to the Lucent Employee Benefits Committee ("Committee"). (*Id.*) The Committee performs the final review for claims arising under the LRIP. (Jt. Ex. 1, Section 3.4.)

Vincent began working for Lucent on June 24, 1985. (Pl.'s Mem. Supp. Mot. Summ. J. 1.) Vincent participated in the LRIP and accumulated benefits under the SBP. (*Id.* at 3.) On September 1, 2001, Vincent was involuntarily transferred to IBM. (Jt. Ex. 15 at 4.) Vincent elected to take a lump-sum distribution from her retirement plan, since she was not eligible for full pension benefits. (Pl.'s Br. Resp. Def.'s Supp. Resp. Br. 8.) Vincent was transferred onto

2

IBM's payroll. (*Id.*) However, Vincent remained in the same building, on the same floor, at the same cubicle, at the same desk, working with the same people. (Jt. Ex. 6 at 10, 16.)

On July 15, 2002, Vincent was rehired by Lucent. She was automatically enrolled in the ABP. (Jt. Ex. 15 at 5.) Vincent immediately pursued re-entry into the SBP and filed a claim with the Administrator on December 15, 2004. (Jt. Ex. 3.) The Administrator denied her claim on March 9, 2005. (Jt. Ex. 4.) Vincent appealed the Administrator's decision to the Committee. (Jt. Ex. 5.) The Committee denied her appeal. (Jt. Ex 7.) Vincent then obtained legal counsel and filed a second claim with the Administrator based on a new legal theory. (Jt. Ex. 10.) On November 6, 2006, the Administrator denied Vincent's second claim. (Jt. Ex. 11.) Vincent appealed the Administrator's decision to the Committee for a second time.

### **Findings of Fact of Administrative Committee**

The Committee found the following:

> "[c]ompany records reflect that Ms. Vincent's employment with lucent terminated on August 31, 2001. . . [b]ased on her age and service on that date, Ms. Vincent did not meet the requirements for eligibility for a service pension, but was eligible for a deferred vested pension under the terms of the LRIP."

(JT. Ex. 15, 4.) "Since [Vincent's] break in service was greater than six months, she was not eligible for an immediate bridge of her prior service upon rehire." (*Id.*)

> "Because Ms. Vincent was not service pension eligible at the time of her termination on August 31, 2001 and because she was not eligible for an immediate service bridge upon rehire, in accordance with the terms of the LRIP . . . she is covered by the [ABP] of the LRIP for the period of service from July 15, 2002 forward."

(*Id.*) The Committee denied Vincent's second appeal on February 21, 2007 and informed Vincent that she exhausted all of her administrative remedies. (*Id.*)

**Standard of Review**

This case arises out of 29 U.S.C. § 1132(a)(1)(b), which permits a plaintiff to bring a civil action to enforce her rights under a retirement plan.

This Court considers four factors in determining the proper standard of review: (1) a court should be guided by principles of trust law, analogizing a plan administrator to a trustee and considering a benefit determination as a fiduciary act; (2) trust law principles require *de novo* review unless the plan's terms provides otherwise; (3) if the plan grants the administrator or fiduciary discretionary authority to determine eligibility, then a deferential standard of review is appropriate; and (4) if the administrator is operating under a conflict of interest, that conflict is a factor in determining whether there was an abuse of discretion. *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2344 (2008) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). A conflict of interest occurs when "a plan administrator both evaluates claims for benefits and pays benefits claims". *Glenn*, 128 S. Ct. at 2348.

The LRIP grants the plan administrator discretionary authority to determine eligibility. The LRIP provides as follows:

> Section 3.14
>
> The Committee shall be the final review committee under the Plan, with the authority to determine conclusively for all parties any and all questions arising from the administration of the Plan, and shall have sole and complete discretionary authority and control to manage the operation and administration of the Plan, including, but not limited to, the determination of all questions relating to eligibility for participation and benefits, interpretation of all Plan provisions, . . . and construction of disputed or doubtful terms.

(Jt. Ex. 1.) This clear delegation of discretionary authority leads to a deferential standard of review. *See Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522 (4th Cir. 2000). Plaintiff, without support of case law, argues that a *de novo* standard of review applies because Defendant

4

refused to produce certain documents. (Pl.'s Mot. Summ. J. 6 n.7.) This Court will apply a deferential standard of review.

"Applying a deferential standard of review does not mean the plan administrator will prevail on the merits. It means only that the plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'" *Conkright v. Frommert*, 130 S. Ct. 1640, 1651 (2010). This Court considers eight nonexclusive factors to determine the reasonableness of an administrator's decision. *Booth v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan*, 201 F.3d 335, 342 (4th Cir. 2000). The *Booth* factors are as follows:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

(*Id.*) An administrator's decision will not be disturbed if reasonable, even if this Court would have come to a different conclusion. *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997).

## Summary Judgment Standard Applied to ERISA Claims

ERISA actions are usually adjudicated on summary judgment rather than at trial. *Carden v. Aetna Life Ins. Co.*, 559 F.3d 256, 260 (4th Cir. 2009).

> Although we review summary judgment [motions] in the light most favorable to the non-moving party, we must also evaluate a denial of benefits under an abuse of discretion standard when, as here, an ERISA benefit plan vests discretionary authority to make benefit eligibility determinations with the plan administrator . . . . [A] decision is reasonable when it is the "result of a deliberate principled reasoning process and if it is supported by substantial evidence."

*Vaughan v. Celanese Ams. Corp.,* 339 F. App'x 320, 322 (4th Cir.2009) (quoting *Brogan v. Holland,* 105 F.3d 158, 161 (4th Cir.1997)) (other citations omitted). The reasonableness of a plan administrator's decision is determined by reference to the eight *Booth* factors. *White v. Eaton Corp. Short Term Disability Plan*, 308 F. App'x 713, 716 (4th Cir. 2009).

This Court will apply the standard for summary judgment, after determining the reasonableness of an administrator's decision. "Under the Federal Rules of Civil Procedure, summary judgment shall be awarded 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 519 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if a reasonable jury, considering the evidence, could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Co. v. Catrett*, 477 U.S. 317, 325 (1986). If this showing is made, the burden then shifts to the non-moving party. *Bouchat*, 346 F.3d at 519.

A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [her] pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 586 (1986); Fed. R. Civ. P. 56(e).

## **Discussion**

*I. The Committee's Benefit Determination Was Unreasonable*

In light of the applicable *Booth* factors, the Committee's benefit determination was unreasonable. Each applicable factor is addressed below.

      a. First *Booth* Factor: Language of the Plan

This Court begins its analysis with the language of the LRIP. Specifically, this Court examines the Section 4.1(a)(ii) of the LRIP, which determines eligibility for returning Lucent employees.

> Section 4.1(a)(ii)
>
> Effective April 1, 2000, the following classes of Participants shall cease accruing benefits under the [SBP] . . . and instead commence accruals under the [ABP] . . . Participants who are rehired by [Lucent] on or after January 1, 1999 who (i) were not eligible for service pensions . . . at the date of their prior Termination of Employment, and (ii) are not eligible for an immediate bridge under Section 6.4(a)(i)(1) (break of less than six months), OR Section 6.6 (temporary layoff)

(Jt. Ex. 1.)

As a general rule, a rehired employee must enroll in the ABP and cannot reenter the SBP. Section 4.1(a)(ii) lists two exceptions to the general rule. First, under Section 6.4(a)(i)(1), an employee may reenter the SBP if their break of employment was less than six months. Second, under Section 6.6, an employee may reenter the SBP if they were temporarily laid off. Thus, this Court must examine the language of Section 6.4(a)(i)(1) and Section 6.6.

      i. Language of Section 6.4(a)(i)(1)

Under the language of Section 6.4(a)(i)(1), Vincent is ineligible to re-enter the SBP. The LRIP defines a "break of less than six months" as follows:

> Section 6.4(a)(i)(1)
>
> Any absence from the service without pay . . . other than . . . [a] temporary layoff as defined in Section 6.6, shall be considered as a break in the continuity of service and if any person is reemployed after such a break in the continuity of [her] service, the individual's Term of Employment shall be reckoned from the date of such reemployment; provided, however, that 1) any break in the continuity of or absence from the service that does not exceed 6 months shall be considered as a leave of absence.

(Jt. Ex. 1.)

Vincent was on IBM's payroll for roughly ten months: August 31, 2001 to July 14, 2002. (Jt. Ex. 15.) Section 6.4(a)(i)(1) requires that an "absence from the service without pay" not exceed six months. Even accepting as true that Plaintiff "remained in the same building, on the same floor, in the same cubicle, at the same desk, working with the same people, and doing the same job," she remained on IBM's payroll. (Pl.'s Mot. Summ. J. 2.) The Committee correctly noted that "the terms of the LRIP provide that service credit can only be granted to individuals who receive regular and stated compensation *directly* from [Lucent's] payroll." (Jt. Ex. 15) (emphasis added.) During those ten months, Vincent only received compensation from IBM and never received compensation from Lucent. Thus, under the language of Section 6.4(a)(i)(1), Vincent was ineligible to reenter the SBP.

Vincent counters that, although she was on IBM's payroll, she was a *de facto* employee of Lucent; thus, she never suffered a break in service. (Pl.'s Mot. Summ. J. 11.) Plaintiff cites the common law definition of employee articulated in *Nationwide Mut. Ins.Co. v. Darden*, 503 U.S. 318 (1992). Applying the *Darden* definition, Plaintiff alleges that she qualifies under the ERISA definition of employee. This Court, however, need not make a final determination as to Plaintiff's common law employee status for reasons explained below.

The terms of the LRIP limit ERISA benefits to employees as defined in Section 2.18. (Jt. Ex. 1.) The definition of employee is as follows:

Section 2.18

Any individual who receives a regular and stated Compensation, other than a pension or retainer, from [Lucent], including a LBA or a Salaried Employee, but excluding . . . (c) an individual who does not receive payment for services directly from [Lucent's] United States . . . payroll even if such individual is reclassified by a court of law or administrative agency as a common law employee.

(*Id.*)  The LRIP limits ERISA benefits to employees directly on Lucent's payroll, even though certain individuals might be employees under the *Darden* definition.  ERISA does not require an employer to make its ERISA plan available to all common law employees.  *See Boggess v. Monsanto Co.*, 2003 WL 715985 at *5 (S.D.W. Va. 2003); *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1340 (11th Cir. 2000); *Clark v. E.I. Dupont De Nemours & Co.*, 105 F.3d 646, 1997 (4th Cir. 1997) (unpublished).  Thus, an employee "may have a plausible argument that he was a common law employee . . . [however] it is the language of the Plan, not the common law status, that controls." *Kolling v. Am. Power Conversion Corp.*, 347 F.3d 11, 14 (1st Cir. 2003).  The LRIP definition controls and, under the language of Section 6.4(a)(i)(1), Vincent is ineligible for an immediate bridge.

    ii.  Language of Section 6.6

  Under the language of Section 6.6, Vincent is eligible to be reinstated into the SBP.  As previously noted, the LRIP provides a second exception that allows an employee who was temporarily laid off to reenter the SBP:

> Section 6.6
>
> Temporary layoff on account of reduction of force shall not be considered as a break in the Term of Employment, but when the total absence from such cause exceeds 6 months in any 12 consecutive months, the entire period of the last temporary layoff which extended the total absence beyond such 6 months in any 12 consecutive months shall be deducted in computing Term of Employment, and all subsequent periods of layoff shall be so deducted; provided, however, that if the Employee shall have been continuously engaged in the performance of duty for a period of 12 consecutive months the last temporary layoff shall be counted. *A period of layoff shall be considered as temporary if the Employee is reemployed, under such conditions as the rules of the Participating Company, which employs such individual, as adopted from time to time, may require, within 3 years*. If the Employee is not thus reemployed, the continuity of the Term of Employment shall be deemed to have been broken.

(Jt. Ex. 1) (emphasis added.)

The Committee cited Section 4.1(a)(ii) in denying Vincent's second appeal. (Jt. Ex. 15.) Section 4.1(a)(ii)'s language explicitly mentions two exceptions; Section 6.4(a)(i)(1) and Section 6.6 (Jt. Ex. 1.), yet the Committee only discussed Section 6.4(a)(i)(1). (Jt. Ex. 15.) This Court will review Section 6.6, as it is language within the Plan. *See Booth*, 201 F.3d at 342.

First, Vincent was laid off pursuant to a reduction in force. Section 6.6 applies to a "temporary layoff on account of *reduction of force*." (Jt. Ex. 1.) (emphasis added). The administrative record shows that Vincent as well as other were outsourced—an obvious reduction in force. (J. Ex. 1 at 12.)

Second, under the language of the Plan, Vincent was temporarily laid off. "The language of the plan must be given its common and ordinary meaning as a reasonable person in the position of the plan participant would have understood the words, not as the actual participant would have understood or desired." *Parker v. Kraft Foods Global, Inc.*, 2010 WL 1929555, 13 (W.D.N.C. 2010); *see also Booth*, 201 F.3d at 340 (holding that ERISA plans, as contractual documents, are interpreted *de novo* by the courts, which conduct their review without deferring to either party's interpretation). The Plan provides that a layoff is considered temporary if the employee is reemployed within three years. Defendants cannot point to any other language in the Plan that adds a gloss to "temporary layoff." Plaintiff was involuntarily transferred from Lucent on September 1, 2001. (Jt. Ex. 15.) She was reemployed on July 15, 2002. (*Id.*) Plaintiff was thus reemployed by Lucent within three years of her layoff. Under the language of Section 6.6, Vincent qualifies for an immediate bridge and can reenter the SBP.

Defendant presents four arguments why Section 6.6 cannot assist Plaintiff. Each of the Defendant's arguments will be addressed in turn.

First, Defendant argues that Plaintiff cannot rely on Section 6.6 because Plaintiff did not raise Section 6.6 below. Defendant cites several cases that hold an administrator cannot be responsible for failing to consider evidence that plaintiff failed to present. *Webster v. Black & Decker Inc.*, 33 Fed. Appx. 69, 75 (4th Cir. 2002); *Sandoval v. Atena Life & Cas. Ins. Co.*, 967 F.2d 377, 381 (10th Cir. 1992); *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1139 (11th Cir. 1989).

The Fourth Circuit has not directly addressed this issue in an ERISA context: whether legal arguments not raised in administrative review are barred in judicial review (i.e., issue exhaustion). The Third and Ninth Circuits have squarely addressed this issue, and both hold that in an ERISA context, issue exhaustion is not required. *See Wolf v. Nat'l Shopment Pension Fund*, 728 F.2d 182, 186 (3d Cir. 1984); *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 631 (9th Cir. 2008). This Court, however, need not rely on the Third and Ninth Circuits since Defendant's Motion fails to cite any law that supports an "issue exhaustion" requirement in an ERISA context. The cases cited by Defendant hold that new *evidence* cannot be raised, but a legal argument is not new evidence. Plaintiff may raise Section 6.6.

Second, Defendant alleges that Section 6.6 cannot be reasonably construed to cover Plaintiff's circumstances. As the Court discussed above, Section 6.6 explicitly covers Vincent's circumstances.

Third, Defendant alleges that Vincent may not reenter the SBP because she did not redeposit her lump sum payout. Vincent received a lump sum payout in 2001, when she was transferred from Lucent. Plaintiff counters that "[she] sought to and was fully prepared to repay her lump sum distribution in order to be reactivated into the [SBP] (and still is)" (Pl.'s Br. Reply

Def.'s Supplemental Resp. Br. 8.) To reenter the SBP, Plaintiff must repay her lump sum distribution with interest within six months of this Order.

Fourth, Defendant argues that the Plan administrator, not this Court, should be the first to construe Section 6.6's application. If a plan administrator failed to comply with ERISA's procedural guidelines, the proper action for a court is a remand to the plan administrator and not to award substantive benefits. *Weaver v. Phoenix Home Life Mut. Ins. Co.*, 990 F.2d 154, 159 (4th Cir. 1993). "The only exception to [this] rule [is] where the record establishes that the plan administrator's denial of the claim was an abuse of discretion as a matter of law." *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 240 (4th Cir. 2008). A single honest mistake in plan interpretation does not justify stripping the plan administrator of deference for subsequent related interpretations of the plan. *Conkright v. Frommert*, 130 S. Ct. 1640, 1644 (2010). However, "[m]ultiple erroneous interpretations of the same plan provision, even if issued in good faith, might well support a finding that a plan administrator is too incompetent to exercise his discretion fairly . . . ." *Conkright*, 130 S. Ct. 1651.

The Committee's failure to address Section 6.6 was not a single honest mistake. The record is devoid of any evidence of a single honest mistake. Plaintiff's claim was denied in total four times. (Jt. Ex. 4, Jt. Ex. 7, Jt. Ex. 11, Jt. Ex. 15.) The Administrator and Committee never once cited to or addressed Section 6.6 when they denied Plaintiff's claim. At best, by ignoring Section 6.6, the Administrator and Committee made multiple honest mistakes and erroneous interpretations of the Plan. Thus, this matter will not be remanded to the Administrator.

The *Booth* factor of language weighs against the Committee's decision to deny Plaintiff reentry to the SBP. The language of Section 6.6 does not support the Committee's decision to deny Plaintiff's claim; and under Section 6.6, Plaintiff is eligible to re-enter the SBP.

b. Third *Booth* Factor: The Adequacy of the Materials Considered to Make the Decision and the Degree to Which it Supports their Decision

The Administrator and Committee had adequate materials to make their decision. The LRIP establishes Lucent's retirement plans in great detail—it is over 100 pages. (Jt. Ex. 1.) LRIP Section 6.4(a)(i)(1) supports the Committee's decision to deny Plaintiff's claim. LRIP Section 6.6, as previously discussed, does not support the Committee's decision to deny Plaintiff's claim. Thus, this factor weighs against the Committee's decision.

c. Fourth *Booth* Factor: Whether the Fiduciary's Interpretation was Consistent with Other Provisions in the Plan and with Earlier Interpretations of the Plan

The Committee's interpretation was inconsistent with other provisions of the plan. As previously noted, the Committee cited to Section 4.1(a)(ii)(1) to deny Plaintiff's claim. Section 4.1(a)(ii) explicitly references Section 6.4(a)(i)(1) and Section 6.6. Ignoring Section 6.6 is inconsistent with Section 4.1(a)(ii)(1). Thus, this factor weighs against the Committee's decision.

d. Fifth *Booth* Factor: Whether the Decision Making Process was Reasoned and Principled

The Committee's decision-making process was not reasoned. The Committee reasonably denied Plaintiff's claim under Section 6.4(a)(i)(1). The Committee failed to address Section 6.6. It was unreasonable for both the Administrator and Committee to ignore the LRIP's plain language. This factor weighs against the reasonableness of the Committee's decision.

e. Eighth *Booth* Factor: The Fiduciary's Conflict of Interest

Lucent has a conflict of interest because they determine benefits and pay claims. This factor weighs against the reasonableness of the Committee's decision.

f. Sum of the Factors

The sum of the *Booth* factors leads this Court to conclude that the Committee abused their discretion in denying Plaintiff's claim to reenter the SBP. The Committee repeatedly ignored the plain language of its own plan, inadequately considered the LRIP by ignoring Section 6.6, inconsistently applied Section 4.1(a)(ii)(1), engaged in a poorly reasoned decision making process, and operated under a conflict of interest. The sum of these factors indicates that the Committees decision was unreasonable.

      g.  Conclusion with Respect to Summary Judgment

For the reasons discussed above, this Court concludes that the Committee abused their discretion in denying Plaintiff's claim. With respect to summary judgment, this Court determines that there is no genuine issue of material fact. LRIP Section 6.6 is clear that Plaintiff may reenter the SBP. No reasonable jury could find in favor of Defendant when interpreting Section 6.6. Thus, Summary Judgment, finding the Plaintiff is eligible to reenter the SBP, is appropriate.

    II.  *Earned Service Credit Adjustments for Time at IBM and Continuing Through the Present*

Plaintiff seeks an earned service credit adjustment, crediting Plaintiff for her ten months at IBM and continuing to the present. Defendant must grant Plaintiff earned service credit in the SBP from September 1, 2001 onward.

Section 6.6 provides as follows:

> Temporary layoff on account of reduction of force shall not be considered as a break in the Term of Employment, but when the total absence from such cause exceeds 6 months in any 12 consecutive months, the entire period of the last temporary layoff which extended the total absence beyond such 6 months in any 12 consecutive months shall be deducted in computing Term of Employment, and all subsequent periods of layoff shall be so deducted; *provided, however, that if the Employee shall have been continuously engaged in the performance of duty for a period of 12 consecutive months the last temporary layoff shall be counted.*

(Jt. Ex. 1) (emphasis added.)

Plaintiff was "continuously engaged in the performance of a duty for a period of 12 consecutive months." (*Id.*) Plaintiff was employed, by Lucent, for 15 years before her transfer to IBM. Plaintiff was rehired in 2002, and she remains continuously engaged in her performance of duty for Lucent. Because Plaintiff was "continuously engaged in the performance of duty for over 12 months," both before and after her transfer, "the last temporary layoff shall be counted." (*Id.*) The language of the LRIP requires that Plaintiff receive earned service credit, in the SBP, from September 1, 2001 forward.

II. Plaintiff Will Not Receive Statutory Damages for Failure to Produce Documents

Plaintiff, by way of Summary Judgment, seeks statutory damages for Defendant's refusal to disclose requested documents as required by 29 U.S.C. § 1024(b)(4). One of ERISA's central goals is to "enable plan beneficiaries to learn their rights and obligations at any time." *Curtiss-Wright Co. v. Schoonejongen*, 514 U.S. 73, 83 (1995). This goal is reflected in ERISA's scheme of reporting and disclosure requirements: "[the] plan administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updates summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). This obligation to provide plan documents does not require that the plan administrator produce any document relating to the plan, but only formal documents that establish or govern the plan. *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 652 (4th Cir. 1996). Formal documents that establish or govern the plan has been defined as follows:

> [I]f an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

15

29 C.F.R. § 2560.503-1(g)(v)(a).

An administrator who fails to produce required documents is subject to monetary punishment. 29 U.S.C. § 1132(c)(1)(b).

On January 10, 2006, Vincent's counsel requested the following documents from Lucent: (1) any amendments or restatements to the LRIP that would be applicable to Plaintiff's claim; (2) copies of "any plan regulations, policies, procedures or other memoranda governing application of the "break in service" provisions of the plan; and (3) "[a] copy of the entire 'administrative record' assembled by the Plan or Lucent in consideration of Lynn Vincent's benefit claim. . . . [T]he administrative record [includes] copies of any investigative materials, benefit committee memoranda, meeting tapes, transcripts, or minutes, or other documents considered by or relevant to the Benefit Committee's review of Ms. Vincent's claim." (LAR 006.)

Defendant responded on January 17, 2006. As to document request one, Defendant stated that there were no pertinent amendments or restatements to the Plan. Plaintiff already had a copy of the Plan. Thus, as there were no amendments and Plaintiff already had the Plan. As to document request two, Defendant stated, "the documents you are seeking are ambiguous, and it does not appear that under ERISA we would have the obligation to furnish this to you." (LAR 003.) As to document request three, Defendant stated, "we are also declining to provide you with a complete copy of the previous administrative record." (LAR 003.)

Regarding request one, Plaintiff had a copy of the plan. In fact, Plaintiff never requested a copy of the plan. Instead, Plaintiff requested that any new amendments be disclosed. Since there were no amendments to the plan, there was no failure to disclose under 29 U.S.C. § 1024(b)(4). *See Ward v. Maloney*, 386 F. Supp. 2d 607, 613 (M.D.N.C. 2005) ("[A] [d]efendant

is under no obligation to create a summary of material modifications when no material modification occurred.").

As to the second request, Defendant enclosed all memoranda relied upon in making the adverse determination. (Jt. Ex. 15.) In each adverse determination, either the administrator or the Committee cited to the relevant provisions of the plan. Thus, Plaintiff was in possession of the "internal rule" which was relied upon in making the adverse employment decision, and there was no violation.

As to the third document request, Plaintiff fails to provide any case law that supports the proposition that the entire "administrative record" must be disclosed. *Faircloth* is clear that Defendant's are not required to turn over all documents related to the plan. *Faircloth*, 91 F.3d at 652. Thus, no statutory damages are warranted for failure to disclose.

*III. Attorney Fees*

The Court reserves judgment as to Plaintiff's request for attorney fees, including costs and expenses incurred. The Court recognizes that attorney fees are recoverable in an ERISA action. 29 U.S.C. § 1332(g). However, the issue of attorney fees is peripheral to this action and can be resolved at a later date. Plaintiff must brief the issue of attorney fees. Plaintiff is ordered to submit the first brief, due 45 days from this order. Defendants must respond within 30 days.

## Conclusion

IT IS ORDERED that Defendant allow Plaintiff to reenter the Lucent Service Based Pension Program upon Plaintiff repaying her lump sum distribution; that Plaintiff receive earned service credit, in the SBP, from September 1, 2001 forward; that Plaintiff's request for statutory damages is DENIED; that Plaintiff's request for attorney fees is HELD IN ABEYANCE; that Defendant's Motion for Summary Judgment is DENIED as to a request of injunctive relief; and

17

that Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's statutory damages claim.

**SO ORDERED.**

Signed: August 24, 2010

Graham C. Mullen
United States District Judge